## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS
## EAST ST. LOUIS DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| ROBERT J. ROEDL, | ) | Case No.: 20-31140 |
| | ) | Chapter 7 |
| Debtor. | ) | |

## UNITED STATES TRUSTEE'S MEMORANDUM OF LAW IN OPPOSTION TO RESPONDENTS' MOTION FOR SUMMARY JUDGMENT AS TO THE UNITED STATES TRUSTEE'S MOTION FOR A DETERMINATION OF REASONABLE VALUE OF SERVICES OF DEBTOR'S ATTORNEY AND FOR SANCTIONS

Nancy Gargula, United States Trustee for Region 10 ("UST"), respectfully files her Memorandum of Law in Opposition to Respondents' Motion for Summary Judgment as to the United States Trustee's Motion for a Determination of Reasonable Value of Services of Debtor's Attorney and For Sanctions.

While the UST agrees that the material facts are not in dispute, including those additional material facts as asserted by the UST in her Response, the UST asserts that Respondents are mistaken as to the law that applies to this case and to these undisputed material facts.

## I.    The Code Imposes a Duty on Debtor's Attorney to Conduct a Reasonable Investigation and Make an Inquiry.

The UST's Fee Examination Motion is based upon the statutory provision requiring counsel for the debtor to perform a reasonable investigation into the circumstances that give rise to the petition.  This requirement is set forth in Sections 707(b)(4)(C) and (D) as follows:

> (C) The signature of an attorney on a petition, pleading, or written motion shall constitute a certification that the attorney has—
>> (i) performed a reasonable investigation into the circumstances that gave rise to the petition, pleading, or written motion; and
>> (ii) determined that the petition, pleading, or written motion—
>>> (I) is well grounded in fact;
>>> …

1

(D) The signature of an attorney on the petition shall constitute a certification that the attorney has no knowledge after an inquiry that the information in the schedules filed with such petition is incorrect.

Implicit in an attorney's obligation to represent a chapter 7 debtor is that the attorney will conduct a reasonably diligent investigation and provide the debtor with competent representation. (*See In re Moffett,* 2012 WL 693362, *3-4 (Bankr. C. D. Ill. March 2, 2012).) Indeed, an attorney has an independent duty to investigate and verify the contents of the Debtors' schedules and SOFA. *U.S. Trustee vs. Breset,* 246 B.R. 784 (Bankr. M.D. Penn. 2000). The attorney may not discharge this obligation by simply relying upon the client's duty to provide accurate information. *Id.* Rather, an attorney must investigate and ask questions based upon information provided by the client that may lead to additional relevant information. *See In re Casavalencia,* 389 B.R. 292, 296 (Bankr. S.D. Fla. 2008) (imposing sanctions under Rule 9011 and 11 U.S.C. §§ 105(a) and 526(a)(2) on attorney because the falsehoods contained in his client's filed petition and schedules would have been known to attorney "upon the exercise of reasonable care."). An attorney must "make a reasonable inquiry as to the circumstances giving rise to the bankruptcy petition and all facts asserted therein." *In re Finn,* 2020 WL 6065755 *7 (Bankr. C.D. IL. August 28, 2020), *citing In re Beinhauer,* 570 B.R. 128, 136 (Bankr. E.D.N.Y. 2017).

Respondents could not have fully investigated the Debtor's financial affairs and still made the error of failing to properly disclose Debtor's interest in the zero-turn mower (the "Zero Turn"). *See In re Swisher,* 17-70310, 2017 WL 5634594, footnote 1, C.D. Illinois, November 22, 2017, (Gorman, J.) ("But the disclosures [on Schedule A/B] … were clearly wrong and seemingly conflicted with the information provided elsewhere about how much money the Debtor had, either in cash or in her savings account. The attorney could not have fully investigated the Debtor's affairs as required and still made such errors. 11 U.S.C. § 707(b)(4)(C)."). In *Swisher,* the court denied a debtor's discharge for, among other reasons, making a false oath on her schedules when she stated that she had no cash

on hand when she did actually have cash on hand arising from a tax refund she had received prior to filing her bankruptcy case. *Swisher* at *1-2. The conflicting information on Schedule A/B that should have alerted debtor's counsel to fully investigate was the statement that she "got a tax refund of $9707.05 federal and $895.00 state." *Id.*

An attorney cannot satisfy his obligation under the Code by simply reviewing, even if repetitively, the same deficient information provided by a client. If it were sufficient, the duty to conduct a reasonable investigation would be dependent solely upon the client and not the attorney. The statute makes clear that the attorney's duty to investigate is independent of a debtor's duties under the Code. An attorney cannot discharge this duty by only acting as a scribe of the client's information without investigating or inquiring as to the completeness or accuracy of that information. .

## II.   Rule 9011 Does Not Apply to Sanctions that May be Awarded Under 11 U.S.C. §707(b)(4)(C) and (D).

Congress created the U.S. Trustee Program for the express purpose of enforcing bankruptcy law and to protect the public interest. H.R. Rep. 95–595, 95th Cong., 1st Sess. 109 (1977), U.S. Code Cong. & Admin. News 1978, pp. 5963, 6070. The UST serves as the bankruptcy watchdog to prevent fraud, dishonesty, and overreaching in bankruptcy cases. H.R. Rep. 95–595, 95th Cong., 1st Sess. 88 (1977), U.S. Code Cong. & Admin. News 1978, pp. 5963, 6049. By Sections 329 and 707(b)(4)(C) and (D) (as well as §§ 526-528), Congress sought to protect vulnerable consumer debtors from potential overreaching and perceived abuses by attorneys (*See Matter of Geraci,* 138 F.3d 314, 320 (7th Cir.1998) (§ 329)) and perceived abuses of the bankruptcy system. *Milavetz, Gallop & Milavetz, P.A. v. U.S.,* 559 U.S. 229, 232 (U.S. 2010) (§§ 526-528).) Section 329 confers standing on the Court and UST to enforce those provisions regulating attorney conduct and fees. Thus, the §§ 329 and 707(b)(4)(C) and (D) claims brought by the UST in her Fee Examination Motion are directly within her Congressionally-assigned role to enforce bankruptcy laws, investigate and review attorney misconduct and compensation, and protect the public interest.

3

Sections 707(b)(4)(C) and (D) did not exist prior to the passage of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"). The authorities cited by Respondents at Page 3 of their Brief for the proposition that the safe-harbor provisions of Rule 9011 are also imposed upon §§ 707(b)(4)(C) and (D) do not, in fact, support their position.  Respondents cite the cases of *In re Bonilla*, 573 B.R. 368 (Bankr. D. Puerto Rico 2017), and *In re Roman* 574 B.R. 430 (Bankr. D. Puerto Rico 2017) in support of their position that Rule 9011 applies to this case.  (Respondents' Brief at Pge. 3).  Both cases are distinguishable from the case at bar for several reasons.

First, the UST in *Bonilla* and in *Roman* sought relief, including sanctions, under Rule 9011.  The UST is not seeking sanctions under Rule 9011 in this case.

Second, the defective documents in both *Bonilla* and *Roman* which prompted the sanctions motion were not the schedules[1], in contrast to the deficient Schedule A/B that is at issue in this case. Debtor's Schedule A/B omitted an estate asset – the Zero Turn – and was deficient from the commencement of the case.   The omission of the Zero Turn was only rectified after counsel for the UST brought the deficiency to the attention of Respondents.  Even if the Court determined that Rule 9011 applies to the Fee Review Motion, the exception afforded by Rule 9011(c)(1)(A) likewise applies as discussed by the court in *In re Parikh*, 508 B.R. 572, 588 (Bankr. E.D. N.Y. 2014) (failure to comply with the safe-harbor provision of Rule 9011(c) applies to all filings except the petition and schedules).[2] Judge Gorman, in the Central District of Illinois, recently addressed this same argument by one of the Respondents, UpRight Law:

---

[1] The offending documents being the subject of the sanctions motion involved the disclosure of attorney compensation and not the schedules. In addition, the attorney was attempting to collect dischargeable post-petition fees.  *See Bonilla* at 369 and *Roman* at 432.

[2] Respondents fail to cite to the *Parikh* Court's holding that Rule 9011 sanctions were precluded with "regard to all papers filed … in this case – ***other than*** the bankruptcy petition and schedules." *Parikh*, 508 B.R. at 588 (Emphasis in original).

Rule 9011 provides that, to obtain sanctions for a violation of its mandates, an aggrieved party must first serve a copy of any proposed motion for sanctions on the offending party, providing not less than 21 days to withdraw or appropriately correct "the challenged paper, claim, defense, contention, allegation, or denial[.]" Fed. R. Bankr. P. 9011(c)(1)(A). These safe-harbor provisions do not apply, however, when it is the filing of the petition that violates the rule. *Id.* Likewise, the safe-harbor provisions do not apply when a court initiates the inquiry as to whether conduct is sanctionable by issuing an order to show cause *sua sponte.* Fed. R. Bankr. P. 9011(c)(1)(B). Here, the UST admittedly sent no safe-harbor notice … before filing the Motions for Sanctions, but the UST also does not rely on Rule 9011 in seeking sanctions.

…

[E]ven if the safe-harbor provisions generally apply to §707(b)(4) requests for sanctions, the provisions do not apply with respect to the filing of the petition **and schedules** because such filings have "immediate collateral effects" and such documents generally cannot be withdrawn without court approval. *In re Parikh*, 508 B.R 572, 588 (Bankr. E.D.N.Y. 2014) (citing *Levey v. Kesser Cleaners Corp.*, 2007 WL 2177048, at *3 (E.D.N.Y. July 27, 2007)).

*In re Finn*, 2020 WL 6065755 at *8 (C.D.Ill. Aug. 28, 2020) (emphasis added).

Third, even if the Court determines that the safe-harbor provision of Rule 9011 does apply, this determination would not be fatal to the UST's request for the Court to review the fees, reduce the fees, or award sanctions, because the Court could still find that Respondents violated §§ 707(b)(4)(C) or (D) and review and reduce fees or impose sanctions for that violation  under § 105 of the Bankruptcy Code or through the exercise of the Court's inherent authority to regulate attorneys appearing before it in order to implement a finding that Respondents violated §§707(b)(4)(C) or (D).

Bankruptcy courts have broad authority and inherent power to impose sanctions on parties and attorneys for case-related wrongdoing. *In re Rimsat, Ltd.*, 212 F.3d 1039, 1049 (7th Cir. 2000). The authority derives from §105 of the Code that provides, in part, that a "court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. §105(a). Under §105, bankruptcy courts have "broad powers . . . to implement the provisions of Title 11 and to prevent an abuse of the bankruptcy process." *In re Volpert*, 110 F.3d 494, 500 (7th Cir. 1997). Although a "sanctioning court should ordinarily rely on available authority conferred by statutes and procedural rules," it may use its inherent powers when such statutes and rules are inadequate "to serve the court's purposes." *Rimsat*, 212 F.3d at 1048-49 (citations omitted).

*Finn* at *7.

### III.    The Ability to Amend Schedules does not Eliminate the Requirements of §§ 707(b)(4)(C) and (D).

Next, Respondents argue that because Bankruptcy Rules 1009 and 9005 allow for amendments, once an amendment is filed, any wrongdoing is cured and thus no enforcement action can be commenced. (Respondents' Brief at Pages 6-8 and Affirmative Defenses, ¶¶ 7-9.)  Respondents cite to the Seventh Circuit's statement that "bankruptcy is a mass-production operation[.] [E]rrors and oversights are inevitable. *Singson v. Ludwig & Shlimovitz, S.C.*, 41 F.3d 316, 319 (7th Cir. 1994)." (UpRight Law Motion for Summary Judgment, Page 6.)   It is true that bankruptcy filings will never be error-free, but that doesn't absolve counsel of complying with their obligations under §§ 707(b)(4). Respondents' reliance on the case of *In re Yonikus*, 996 F.2d. 866 (7th Cir. 1993) for the proposition that the amendment of Schedules A/B prohibits liability under a Section 707(b)(4)(C) and (D) claim is also misplaced.  *Yonikus* addressed only whether a debtor can amend Schedule C to claim an exemption in a previously undisclosed worker's compensation claim. *Yonikus* does not address the issue of whether Rule 1009 can be used as a shield against *an attorney's* liability for a violation of §§ 329 or 707.  The UST is not contending that the Debtor should not have been permitted to amend his Schedule A/B. Rather, the UST contends that amendment would not have been necessary if the Respondents had appropriately discharged their obligations under the Bankruptcy Code and the Illinois Rules of Professional Conduct.

For obvious reasons, Respondents fail to acknowledge that other courts in the Seventh Circuit also hold that:

> Filing amendments after the errors have been discovered does not 'cure the initial failures.' *Id.* "The operation of the bankruptcy system depends on honest reporting. If debtors could omit assets at will, with the only penalty that they had to file an amended claim once caught, cheating would be altogether too attractive." *Payne v. Wood*, 775 F.2d 202, 205 (7th Cir. 1985).

*Finn*, at *11.

"Rule 61 when read in conjunction with the Federal Rule of Bankruptcy Procedure 9005 permits the Bankruptcy court to correct any error or defect or to cure any omission which does not affect substantial rights." *See In re Arens,* 139 B.R. 667, 669 (Bankr. N.D. Ohio 1991) (citing *In re Carapella,* 115 B.R. 365 (M.D.Fla.1990). Thus, Rule 61 provides no defense for Respondents' failures under §§ 329 and 707. Rather, "[t]he [R]ule[s] [are] clear that **"harmless error" by the court** will not warrant a reversal of its judgment." *Arens,* 139 B.R. at 669 (emphasis supplied). However, Respondents' violations of §§ 329 or 707 are not "harmless errors" *by the Court* that these Rules excuse. The Rules permit the Court to correct its own errors, not excuse those of counsel.

Similarly, while Rule 1009 authorizes debtors to amend documents filed in bankruptcy cases, it does not excuse attorney errors or decisions to not conduct a reasonable investigation into the facts and circumstances of a bankruptcy petition. "Filing amendments after the errors have been discovered does not 'cure the initial failures.'" *Finn,* at *11 (discussing the numerous errors committed by an UpRight Law partner attorney). In fact, Bankruptcy Rule 1008, not Rule 1009, applies to Respondents' errors and deficient representation. *See In re Dobbs,* 535 B.R. 675, 685 (Bankr. N.D. Miss. 2015) (citations omitted) ("attorney who files schedules and statements on a debtor's behalf makes a certification regarding the representations contained therein….The attorney's certification is not an "absolute guaranty of accuracy," but is …an endorsement "based upon the attorney's best knowledge, information and belief, 'formed after an inquiry reasonable under the circumstances.'").

Respondents were not aware of the omission of an estate asset despite the information being readily available on a publicly available website, free of charge, for months until the omission was brought to their attention by counsel for the UST. Attorney Buch admitted that it is common to have a transfer of assets between spouses during a dissolution of marriage proceeding but that despite this, he did not review the Debtor's dissolution proceedings. The failure to self-amend the schedules when estate assets are omitted is not "harmless error." Again, Respondents fail to recognize that the error

7

was not only Debtor's, but also counsel's error.    Counsel was required to conduct a reasonable investigation, at no expense to counsel through the publicly available free on-line services, that would have revealed Debtor's interest in the Zero Turn.    Had counsel done so, as required, he could have averted Debtor from appearing for a Rule 2004 examination concerning the omitted estate asset and insulated Debtor from the possible denial of his discharge.    The error in this case that gives rise to the UST's Fee Review Motion is not the Debtor's failure to list the Zero Turn but rather Respondents' admitted failure to conduct any investigation whatsoever into the information provided to them in the preparation of the Debtor's Schedule A/B when that information suggested that such an investigation was appropriate.

Respondents' assertion in their Brief that "there is no basis in the record for a reasonable factfinder to conclude that Respondents failed to conduct a reasonable investigation into the circumstances giving rise to Mr. Roedl's bankruptcy" is without merit.    Respondents admit the following: (i) Attorney Buch was aware at the time of the initial in-person consultation on November 13, 2019 (the "Initial Consult") that Debtor was recently divorced; (ii) Attorney Buch was aware at the Initial Consult that the Divorce Case was approximately one year prior thereto; and, (iii) Attorney Buch was aware at the Initial Consult that Debtor resided in a residence located on 4.5 acres.    The Bankruptcy Code and Rules imposed upon counsel the duty to investigate Debtor's circumstances prior to filing Debtor's petition and schedules, including here, to (1) investigate Debtor's recent divorce proceedings, which may be done through a review of the free Judici website, and, (2) investigate how the Debtor maintains a 4.5 acre lawn.    Respondents chose to do neither.

## IV.  Bad Faith is Not Required for Sanctions Under § 105

Respondents' argument that the Court does not have authority under Section 105 to impose sanctions is contrary to the law.    Respondents continue to ignore the well-settled law that "a bankruptcy court has statutory authority under section 105(a) as well as its inherent powers to impose

sanctions for misconduct." *In re Tabor*, 583 B.R. 155, 159 (Bkr.N.D.Ill. 2018) *citing In re Rimstat, Ltd.*, 212 F.3d 1039, 1049 (7th Cir. 2000); *In re Volpert*, 110 F.3d 494, 500 (7th Cir. 1997); *In re Husain*, 533 B.R. 658, 662 (Bankr. N.D. Ill. 2015) (Cox, J.), *aff'd*, 866 F.3d 832 (7th Cir. 2017).  "Bankruptcy Courts, like the other federal courts, have the authority to oversee and correct for attorney conduct. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43–46, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991); *Manez v. Bridgestone Firestone N. Am. Tire, LLC*, 533 F.3d 578, 585 (7th Cir. 2008) (The Supreme Court in Chambers has "reaffirmed the inherent power of the federal courts to address 'a full range of litigation abuses.' ")." *Id.* at 175. "Under § 105, bankruptcy courts have 'broad powers … to implement the provisions of Title 11 and to prevent an abuse of the bankruptcy process." *In re Finn*, 2020 WL 6065755 at *7 *citing In re Volpert* at 500. "The power conferred by § 105 is one to implement rather than to override." *Id.*  To the extent that specific statutory provisions are inadequate to address the relevant conduct, the bankruptcy court "may use its inherent powers when such statutes and rules are inadequate 'to serve the court's purposes.'" *Finn* at *7, *citing Rimsat*, 212 F.3d at 1048-1049.

In this case, Sections 707(b)(4)(C) and (D) impose specific obligations on debtor counsel, including Respondents, to affirmatively perform "a reasonable investigation" and make "inquiry," respectively.  Respondents failed to perform either affirmative act in preparing and filing Debtor's bankruptcy petition.  Respondents' failure was discovered by the UST, and the undisclosed estate asset was brought to the Court's attention.  Only then did Respondents even discuss the undisclosed estate asset with the Debtor and file amended schedules.  "Filing amendments after the errors have been discovered does not 'cure the initial failures.' *Id.* 'The operation of the bankruptcy system depends on honest reporting.  If debtors could omit assets at will, with the only penalty that they had to file an amended claim once caught, cheating would be altogether too attractive.' *Payne v. Wood*, 775 F.2d 202, 205 (7th Cir. 1985)." *Finn* at *11.  Section  105 permits the Court to fashion an appropriate remedy

for debtor's counsel failure to perform their specific statutory affirmative obligation to review a debtor's recent divorce records.

Respondents do not cite to any controlling case authority that the Bankruptcy Court may impose sanctions under § 105 only after a finding of "bad faith."   An appellate court "will not reverse an order imposing sanctions merely because the sanctioning court did not make explicit findings of 'bad faith'." *In re Tabor*, 583 B.R. at 181 *citing Rimsat*, 212 F.3d at 1047.  In *Rimsat* the Seventh Circuit addressed the issue of awarding sanctions against an attorney for alleged abuse of process.  *Rimsat*, 212 F.3d at 1047, n.5.  Citing *Rimsat*, the *Tabor* Court found that "nothing in the language of section 105 conditions the court's authority" to award sanctions under § 105 on a specific finding of bad faith. *Tabor*, 583 B.R. at 180.

Finally, the Court's inherent power to govern the actions or inactions of the attorneys appearing before it permits the Court to impose sanctions to effectuate the Bankruptcy Code provisions at issue in this case.  Subject to exceptions not relevant here, the bankruptcy court has the power under § 105(a) to "tak[e] any action or mak[e] any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process."  11 U.S.C. § 105(a).  "Bankruptcy courts have broad authority and inherent power to impose sanctions on parties and attorneys for case-related wrongdoing."   *Finn* at *7 (*citing Rimsat*).  Respondents' arguments that the Court does not have authority to impose sanctions or that it must first find bad faith on the part of the Respondents is without merit and must be rejected.

## V.    There is no Evidence to Support a Finding that the Fees Charged were Reasonable Given the Services Rendered.

The Court should reject Respondents' argument that summary judgment should be granted on the U.S. Trustee's §329 claim because there is no disclosure violation and they have not exceeded any presumptively reasonable fee.  Grounds for the cancellation of an attorney's engagement agreement or return of fees are not limited to disclosure errors or exceeding a presumptively

reasonable fee.  See 11. U.S.C. §329. Indeed, Respondents' argument that because there is not currently a presumptively reasonable fee amount set by the Court in the Southern District of Illinois, the UST cannot challenge the fee charged to Debtor is wholly unsupported by any Bankruptcy Code provision, Bankruptcy Rule, or case decision in this District. This frivolous claim is contradicted by the decision in *Homa v. Gargula,* No. 19-cv-1139-NJR, 2019 WL 6701684 (December 9, 2019), which rejected Upright Law's demand that a presumptively reasonable fee must be set in this District. Moreover, even if there were a presumptively reasonable fee in place, it is well-settled in the Seventh Circuit that the existence of such a presumptive fee does not preclude any party from challenging the reasonableness of the attorney's fees. Rather, "[o]nce a question has been raised about the reasonableness of the attorney's fee under section 329, it is the attorney himself who bears the burden of establishing that the fee is reasonable." *Geraci,* 138 F.3d at 318.  Accordingly, summary judgment must be denied because Respondents have failed to supply the Court with adequate undisputed evidence that their representation of the Debtor supports the reasonableness of the fees charged.  If anything, summary judgment may be warranted in favor the U.S. Trustee on the §329 claim.

It is irrefutable that the Debtor failed to disclose the existence of an estate asset.  It is irrefutable that Attorney Buch failed to review the Divorce Case records.  It is irrefutable that Attorney Buch knew Debtor's residence consisted of 4.5 acres of land.  It is irrefutable that Respondents failed to conduct a pre-filing investigation that would have disclosed the existence of this asset, causing Debtor to file schedules under penalties of perjury that omitted that asset.

Respondents failed to fulfill the obligations imposed by §§ 707(b)(4)(C) and (D) as well as by the Illinois Rules of Professional Conduct.  The failure of Respondents to review the readily available and free online resources and their failure to ask the necessary and required follow-up questions concerning how Debtor maintained his 4.5 acre lawn permitted Debtor to omit an estate asset from the bankruptcy schedules.  This omission needlessly subjected Debtor to a Rule 2004 examination and

the possible denial of his discharge for concealment or false oath.  Respondents may not discharge their duty to conduct an adequate investigation by simply relying upon the client's duty to provide accurate information. *In re Seare,* 493 B.R. 158, 210 (Bankr. D. Nev. 2013) (debtor's attorney has "an affirmative duty … to take steps to ensure that the client is providing complete and accurate information.")  Contrary to Respondents' arguments, "[m]erely relying on what the debtor provides is insufficient." *Id.* Respondents failed to investigate and ask questions based upon information readily and publicly available. Accordingly, summary judgment must be denied because Respondents have failed to supply the court with adequate undisputed evidence that they fulfilled the obligations imposed by §§ 707(b)(4)(C) and (D) as well as by the Illinois Rules of Professional Conduct.    If anything, summary judgment may be warranted in favor the U.S. Trustee on her §707 claim.

WHEREFORE, the United States Trustee respectfully requests that this Court deny Respondents' Summary Judgment Motion, and for such other and further relief as this Court may deem appropriate.

Dated:  July 15, 2021                                Respectfully Submitted,

                                                                 NANCY J. GARGULA,
                                                                 United States Trustee

                                                                 */s/ Mark D. Skaggs*

                                                                 Mark D. Skaggs,
                                                                 Trial Attorney

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document was served upon all parties of record through their attorneys electronically via the Clerk of the Court's CM/ECF filing system on the 15th day of July, 2021.

Robert J. Roedl
5706 G Rd
Waterloo, IL 62298

*/s/ Mark D. Skaggs*

Mark D. Skaggs

Mark D. Skaggs, ARDC No.: 6210087
United States Department of Justice
Office of the United States Trustee
401 Main Street, Suite 1100
Peoria, IL 61602
Phone: (309) 671-7854, ext. 226
Mobile: (202) 495-9571
Email: Mark.D.Skaggs@usdoj.gov