IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| In Re: | ) | In Proceedings |
| | ) | Under Chapter 7 |
| ROBERT J. ROEDL, | ) | |
| | ) | Bk. No. 20-31140 |
| Debtor. | ) | |

## OPINION

The issue before the Court is whether Debtor's counsel failed to conduct a reasonable investigation of the Debtor's financial affairs prior to filing the Debtor's Chapter 7 bankruptcy such that counsels' attorney's fees should be disgorged and/or sanctions imposed. The matter came before the Court for hearing on August 5, 2021 on the U.S. Trustee's Motion for a Determination of Reasonable Value of Services of Debtor's Attorney and for Sanctions (the "Fee Review Motion") (Doc. 40), the responsive pleading filed by Deighan Law LLC d/b/a in Illinois as UpRight Law LLC ("UpRight Law") and Ronald Allan Buch ("Mr. Buch") (collectively the "Respondents"), raising certain affirmative defenses (the "Affirmative Defenses") (Doc. 48), the Respondents' Motion for Summary Judgment (Doc. 49), the U.S. Trustee's Motion to Strike Respondents' Affirmative Defenses (Doc. 55), the U.S. Trustee's Response to Respondents' Motion for Summary Judgment (Doc. 57), and the Respondents' Opposition to the U.S. Trustee's Motion to Strike Defenses (Doc. 62).

The Court heard argument from Mark Skaggs, attorney for the U.S. Trustee, Charles Armgardt for UpRight Law, and from Mr. Buch. Having considered the pleadings and the argument of counsel, and for the reasons set forth in this Opinion, the Court DENIES the U.S. Trustee's Fee Review Motion. The remaining pleadings and Motions set forth above are thereby MOOT.

## FACTS

The Debtor, Mr. Roedl, paid UpRight Law $1,247.00 for attorney fees and $338.00 for his bankruptcy filing fee in installment payments from July 9, 2019 to November 1. 2019. (Statement of Financial Affairs, paragraph 16; Disclosure of Compensation of Attorney for Debtor). His Chapter 7 Petition was not filed until December 18, 2020, more than thirteen months later. The Court conducted a Status Hearing on January 12, 2021 on the Disclosure of Compensation and directed UpRight Law and Mr. Buch to file an Itemization of Fees and Expenses within thirty days. That Itemization was filed February 11, 2021 (Doc. 21). The Itemization shows that Mr. Roedl contacted UpRight Law on July 9, 2019 and spoke with a non-attorney staff member, David Lowe, to commence the bankruptcy. Mr. Buch was then assigned the case and made a twelve minute "Compliance call with client" on July 10, 2019. On November 1, 2019, when Mr. Roedl had completed his payments to UpRight Law, a non-attorney staff member "Changed case status 'to start.'" The Itemization shows that over the next year, Mr. Buch and his staff noted more than twenty additional contacts with Mr. Roedl in preparing for his bankruptcy filing, including two one-hour meetings between Mr. Buch and Mr. Roedl.

On March 1, 2021, the U.S. Trustee filed Motions for Examination Under Bankruptcy Rule 2004 seeking to examine Mr. Roedl and Mr. Buch. Objections to those Motions were filed by Mr. Buch on behalf of Mr. Roedl and by UpRight Law on behalf of Mr. Buch. The U.S. Trustee also filed a Motion for Extension of Time to Object to Discharge citing the Debtor's possible failure to disclose a mower and ATV on his bankruptcy schedules. On March 18, 2021, the Court granted the U.S. Trustee's Motions for Examination. On March 30, 2021, Mr. Roedl filed an Amended Schedule A/B to add a "2013 Cub Cadet Z Force" mower (the "Zero Turn mower") which he valued at $750.00 and an Amended Schedule C to exempt the mower. The Court entered an Order granting the Trustee's Motion for Extension of Time to Object to Discharge on April 1, 2021.

On May 27, 2021, the U.S. Trustee filed her Fee Review Motion asserting that the fees charged in this case exceed the reasonable value of services provided to Mr. Roedl and should be refunded and asserting further that a sanction should be imposed against UpRight Law and Mr. Buch "for their failure to conduct a proper investigation into the financial affairs of the Debtor and the information contained in the Schedules." The U.S. Trustee contends that relief is warranted because UpRight Law and Mr. Buch failed to discover the Debtor's ownership in the Zero Turn mower and failed to include the asset in Mr. Roedl's original bankruptcy schedules. The U.S. Trustee argues that the fact that the Debtor disclosed a residence which includes approximately 4.5 acres of real estate should have led counsel to investigate further into whether the Debtor owned a mower. In particular, the U.S. Trustee cites the Debtor's 2018 divorce judgment in Monroe County, Illinois, in which the Debtor was awarded sole ownership of the Zero Turn mower. In support of her Fee Review Motion, the U.S. Trustee attaches a Case History from the judici.com website showing an entry in Mr. Roedl's divorce case on September 5, 2018 stating in part - "Robert shall be awarded all personal property not awarded to Jean herein and specifically the zero turn lawnmower and 4 wheeler" (Doc. 40-1). The U.S. Trustee argues that a reasonable investigation of the Debtor's financial affairs required Mr. Buch to review the website judici.com and that such a review would have revealed the Debtor's divorce case and property award.

UpRight Law and Mr. Buch have provided the Court various documents relating to their preparation of Mr. Roedl's case, including a Declaration of Ronald A. Buch (Doc. 49-2), Mr. Buch's Client Interview Form (Doc. 49-4), a Client Asset Information Worksheet completed by Mr. Roedl (Doc. 49-5), and a copy of the transcript of the 2004 Examination of Mr. Roedl conducted by the U.S. Trustee on May 6, 2021 (Doc. 49-6). In his Declaration, Mr. Buch outlines the process by which he and his staff prepared Mr. Roedl's bankruptcy, including emails, telephone calls, and in-person

meetings between Mr. Buch and Mr. Roedl, as well as the on-going document review conducted by Mr. Buch and his staff. In particular, Mr. Buch describes his meeting with Mr. Roedl on November 13, 2019 during which Mr. Buch went through his thirty-two page Client Interview Form and recorded Mr. Roedl's answers (Doc. 49-2, ¶14). Mr. Buch also attests that "[i]t is my custom with **every** client to end our discussion of assets with a set of miscellaneous categories, such as collectibles, things we keep outside (such as swimming pools, trampolines, riding lawn mowers, things we keep in a shed), sporting equipment, exercise equipment, hobby equipment/supplies, tools, jewelry, and firearms" (emphasis in original) (Doc. 49-2, ¶13). Mr. Buch states that "[d]uring our November 13, 2019 meeting, Mr. Roedl did not inform me that he owned a riding lawn mower (Doc. 49-2, ¶16). Mr. Buch also states in his Declaration that he gave Mr. Roedl the Client Asset Information Worksheet at that meeting, and Mr. Roedl "took the asset worksheet with him, completed it, signed it, and returned it to me on November 16, 2019" (Doc. 49-2,¶¶14, 15).

The Worksheet contains more than 250 specific items of personal property from alarm clocks to wind instruments, with space for the client to write the quantity of each item owned and the value thereof (Doc. 49-5). The category "Lawn and Garden" contains fifteen items of property, including "Lawnmower – Riding."  Mr. Roedl did not provide any information in the lawnmower category, although in the category "Hand tools" listed immediately below, Mr. Roedl wrote that he owned "4" hand tools, with a value of "$30.00." Attorney Skaggs questioned Mr. Roedl about the Worksheet during his 2004 Examination (Doc. 49-6, pp. 57 – 59). Although Mr. Roedl initially claimed that he did not remember the Worksheet, he ultimately confirmed that he completed the Worksheet at home and signed it on November 16, 2019 (Doc. 49-6, pp. 57 – 59). When asked why he failed to list the lawnmower on the Worksheet, Mr. Roedl stated, "I just didn't think about it" (Doc. 49-6, p. 60). Mr. Roedl also confirmed during the 2004 Examination that his ex-wife drove him to his November 13,

2019 meeting with Mr. Buch and was present during the meeting (Doc. 49-6, p. 43).

At the hearing on the U.S. Trustee's Fee Review Motion, Mr. Buch again explained that he specifically asked the Debtor whether he owned a riding lawn mower, and that the Debtor had answered "No." Mr. Buch emphasized that "every single intake interview that I ever do includes the category of riding lawnmowers."

## **DISCUSSION**

The Bankruptcy Court has the statutory authority to review attorneys' fees and to determine the reasonableness thereof. *See* 11 U.S.C. §329 and Fed. R. Bankr. P. 2017.

Section 329(b) of the Bankruptcy Code provides:

(a) Any attorney representing a debtor in a case under this title, or in connection with such a case, whether or not such attorney applies for compensation under this title, shall file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, and the source of such compensation.

(b) If such compensation exceeds the reasonable value of any such services, the court may cancel any such agreement, or order the return of any such payment, to the extent excessive, to—

    (1) the estate if the property transferred—

        (A) would have been property of the estate; or
        (B) was to be paid by or on behalf of the debtor under a plan under chapter 11, 12, or 13 of this title; or

    (2) the entity that made such payment.

11 U.S.C. §329(b).

In interpreting this section, the Seventh Circuit has stated:

nothing in section 329(b) suggests that the bankruptcy court's powers may be exercised only where the court has found some evidence of "overreaching," or where counsel's fee would impact the estate. Rather, the bankruptcy court is authorized to act *whenever it determines that the*

> *compensation the debtor has paid or agreed to pay his counsel exceeds the reasonable value of the services provided. No further finding is required.*

*Matter of Geraci*, 138 F.3d 314, 320 (7th Cir. 1998) (emphasis added).

Similarly, Federal Rule of Bankruptcy Procedure 2017(a) provides:

> On motion by any party in interest or on the court's own initiative, the court after notice and a hearing may determine whether any payment of money or any transfer of property by the debtor, made directly or indirectly and in contemplation of the filing of a petition under the Code …, to an attorney for services rendered or to be rendered is excessive.

Fed. R. Bankr. P. 2017.

In this case, the U.S. Trustee argues that Respondents' fees were excessive because counsel failed to conduct a reasonable investigation into the Debtor's financial affairs prior to filing the Debtor's bankruptcy schedules as required by 11 U.S.C. §707(b)(4). The 2005 amendments to the Bankruptcy Code, commonly known as BAPCPA, added provisions to §707(b)(4) clarifying the duty of debtor's counsel with respect to the accuracy of a debtor's bankruptcy schedules. *In re Moffett,* 2012 WL 693362, at *2 (Bankr. C.D. Ill. 2012); *See also In re Kayne*, 453 B.R. 372, 381 (9th Cir. BAP 2011); *In re Withrow,* 405 B.R. 505, 511-512 (1st Cir. BAP 2009) (both cases discussing the legislative history of newly added §§707(b)(4)(C) and (D)). These new provisions, subsections (C) and (D), state:

> (C) The signature of an attorney on a petition, pleading or written motion shall constitute a certification that the attorney has –
>
> > (i) performed a reasonable investigation into the circumstances that gave rise to the petition, pleading, or written motion; and
> >
> > (ii) determined that the petition, pleading, or written motion –
> >
> > > (I) is well grounded in fact; and
> > >
> > > (II) is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law and does not constitute an abuse under paragraph (1).

> (D) The signature of an attorney on the petition shall constitute a certification that the attorney has no knowledge after an inquiry that the information in the schedules filed with the petition is incorrect.

11 U.S.C. §707(b)(4)(C) and (D).

The Court has the authority under 11 U.S.C. §707(b)(4) to sanction an attorney for failing to meet the obligations in §§707(b)(4)(C) and (D). *In re Kayne*, 453 B.R. at 381-382. Additionally, the Court may take such action pursuant to its broad power under 11 U.S.C. §105 to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." *See In re Finn*, 2020 WL 6065755, at *7-8 (Bankr. C.D. Ill. 2020); *In re Tabor*, 583 B.R. 155, 176-179 (Bankr. N.D. Ill. 2018).

Therefore, in exercising its authority to review the fees in this case, the Court must determine whether the Respondents failed to conduct the required "reasonable investigation" as would warrant such a reduction in fees and/or sanctions. As to what constitutes a "reasonable investigation," courts have found that the determination must be made on a case-by-case basis. *In re Tatro*, 2020 WL 534715, at *6 (Bankr. C.D. Ill. 2020); *In re Beinhauer*, 570 B.R. 128, 136 (Bankr. E.D.N.Y. 2017). The standard used to determine reasonableness is an objective one. *In re Kayne,* 453 B.R. at 382*; In re Withrow*, 405 B.R. at 512. Courts must inquire, therefore, whether "a reasonable attorney in like circumstances could believe his actions to be factually and legally justified." *In re Withrow*, 405 B.R. at 512 (quoting *Cabell v. Petty*, 810 F.2d 463, 466 (4th Cir. 1987). The inquiry must be made "at the time the petition was filed without the benefit of hindsight." *In re Beinhauer*, 570 B.R. at 137; citing *In re Seare*, 493 B.R. 158, 211 (Bankr. D. Nev. 2013).

For example, in *Moffett,* the bankruptcy court for the Central District of Illinois sanctioned debtor's counsel under 11 U.S.C. §707(b)(4) for failing to conduct a reasonable

7

investigation where the debtor failed to list a structured settlement in her bankruptcy schedules, and debtor's counsel admitted that he had not met with the debtor and had not reviewed anything except a bare list of creditors prior to filing the case. *In re Moffett*, 2012 WL 693362 (Bankr. C.D. Ill. 2012). In that case, counsel's staff had been tasked with preparing an intake sheet with limited information, but counsel did not even make an effort to review that document. *Id*. at 3. Notably, counsel had previously been admonished by the court for his practice of relying on staff who were inadequately trained and improperly supervised. *Id*. at 4.

Similarly, in *Finn*, the same court disgorged the attorney's fee of debtors' counsel, Eric Homa, an UpRight Law partner, for his failure to conduct a reasonable inquiry in two cases. *In re Finn,* 2020 WL 6065755 (Bankr. C.D. Ill. 2020). The court detailed numerous errors in the debtors' schedules and Statements of Financial Affairs which "were the result of his total disregard for his professional duties." *Id*. at *10. The court did not mince words in providing its assessment of counsel's conduct - "To be blunt, Attorney Homa did not have a clue what was going on with Ms. Finn or the Custers when he filed their bankruptcy cases. His lack of knowledge and effort in both cases is indefensible, and his conduct caused real harm to his clients." *Id.* at *9.

In *Tatro,* a case more akin to the one before this Court, the court determined that a reasonable attorney would have investigated a publicly available database to determine whether a consumer loan company had a perfected non-purchase money security interest in the debtor's personal property. *In re Tatro*, 2020 WL 534715, at *6 (Bankr. C.D. Ill. 2020). In that case, the debtor filed a motion to reopen his case to avoid the creditor's non-purchase security interest. *Id*. at *1. The loan had been listed as unsecured on the debtor's bankruptcy schedules. *Id.* at *2*. The U.S. Trustee filed a motion for disgorgement of fees arguing that debtor's counsel should

have known that consumer loan companies almost always take a non-purchase money lien and that a simple search of the Illinois Secretary of State database would have disclosed the lien. *Id.* at *1. Debtor's counsel argued that the debtor informed him that the lender did not have a lien. *Id.* at *7. Counsel admitted, however, that he was aware that entities such as this lender routinely take non-purchase money security interests in borrowers' personal property and that he did not share that information with the debtor or inquire further into the matter. *Id.* at *6-7. The court noted that counsel could have confirmed the lien "in a minute's time and for free." *Id.* at *7. The court also noted that the problem "may have stemmed, at least in part, from the Debtor's lack of understanding of terms like 'secured' or 'transferred for security'" used by debtor's counsel. *Id.*

In the case before this Court, the U.S. Trustee makes the same argument – that a reasonable inquiry required Respondents to search the public database judici.com for information that would have disclosed the Debtor's ownership of the Zero Turn mower. Although the Court encourages debtors' counsel to use public databases as part of their investigation, the Court cannot conclude that counsel's failure to consult judici.com in this case warrants disgorgement of fees or sanctions. In this case, the failure to disclose the Zero Turn mower on the Debtor's bankruptcy schedules resulted from a lack of candor on the part of the Debtor rather than a failure to investigate on the part of Mr. Buch. Unlike the attorneys sanctioned in *Moffett, Finn,* and *Tatro*, Mr. Buch spent considerable time preparing Mr. Roedl's bankruptcy and discussing Mr. Roedl's property with him. The evidence shows that Mr. Buch specifically asked Mr. Roedl whether he owned a riding lawn mower, and Mr. Roedl told him that he did not. In addition, Mr. Roedl completed the Client Asset Information Worksheet and did not disclose his ownership of the Zero Turn mower on the Worksheet. Mr. Roedl obviously

read the Worksheet, because he disclosed his ownership of four hand tools on the line immediately below the riding lawnmower category.

In perfect hindsight, it is clear that the judici.com website would have revealed that the Debtor had been awarded the Zero Turn mower in his divorce. However, the "reasonable inquiry" determination must be done without the benefit of hindsight. While a reasonable attorney could be expected to verify the perfection of a non-purchase money lien rather than to rely upon his client's understanding of security interests, that attorney should be able to rely upon his client's direct statement that he does not own a lawnmower. It is also worth noting that Mr. Roedl's ex-wife was present when Mr. Roedl told Mr. Buch that he did not own a riding lawnmower. That fact would provide additional reason for Mr. Buch to rely upon Mr. Roedl's statement and to see no further need to research the terms of the Roedl divorce settlement.

While the Court wonders why Mr. Buch did not ask the Debtor how he maintained 4.5 acres of land without a mower, the Court notes that the Debtor's total lack of candor regarding the mower may have led Mr. Buch not to inquire. This case is a close call, but the Court does not believe counsel should be punished for his client's repeated misstatements.

Although the Court declines to grant the U.S. Trustee's Fee Review Motion in this case, the Court appreciates the ongoing efforts of the U.S. Trustee in overseeing attorney compensation pursuant to her duties under 28 U.S.C. §586. Those efforts have revealed issues that arise when debtors' attorneys take installment payments over a long duration and when counsel delay in filing their clients' cases after payment is completed. *See eg. In re Potter*, 2020 WL 6928782 (Bankr. S.D. Ill. 2020). While not a critical factor in this case, those practices can lead to a host of issues relating to the investigation of a debtor's financial affairs. While debtors wait for their bankruptcies to be filed, memories may fade, debtors may be subject to lawsuits,

garnishments, or repossessions, or debtors may purchase and sell property. Debtors' counsel must be cognizant that a "reasonable investigation" is made more difficult when they delay in filing their clients' cases.

## CONCLUSION

For the reasons set forth herein, the U.S. Trustee's Motion for a Determination of Reasonable Value of Services of Debtor's Attorney and for Sanctions is DENIED. The remaining pleadings and Motions are thereby MOOT.

A separate Order shall enter.

ENTERED: September 22, 2021

/s/ Laura K. Grandy
_____
UNITED STATES BANKRUPTCY JUDGE